WHEATLEY *v.* STATE.

Opinion delivered February 7, 1910.

1. HOMICIDE—SELF-DEFENSE.—No one, in resisting an assault made upon him in the course of a sudden brawl or quarrel, is justified or excused in taking the life of the assailant unless it appears to him, acting in good faith and without carelessness, that he is so endangered by such assault as to make it necessary to kill the assailant to save his own life or to prevent his receiving a great bodily injury, and unless he employed all means in his power, consistent with his safety, to avoid the danger and avert the necessity of the killing. (Page 414.)

2. SAME—SELF-DEFENSE—ACTING ON APPEARANCES.—To be justified in acting on appearances and killing an assailant, one must honestly believe, without carelessness, that the danger is so urgent that it is necessary to kill in order to save one's life or to prevent great bodily danger. (Page 414.)

3. SAME—OPPROBRIOUS WORDS.—Mere opprobrious words do not reduce a homicide from murder to manslaughter. (Page 414.)

4. SAME—SELF-DEFENSE.—One speaking opprobrious words is not precluded from acting in self-defense unless he uses them for the purpose of bringing on an attack and an opportunity of killing the person thereby provoked or to do him great bodily injury. (Page 414.)

5. SAME—PROVOCATION OF ASSAULT.—One who intentionally provokes a combat and then slays his assailant cannot claim that the killing was in self-defense unless, after provoking the combat, he withdraws therefrom as far as he can and does all in his power to avoid the danger and avert the necessity of the killing. (Page 414.)

6. SAME—DEFENSE OF RELATIVE.—One can lawfully do for his brother, when threatened with death or great bodily injury, what he can lawfully do for himself under the same circumstances. (Page 415.)

Appeal from Garland Circuit Court; *W. H. Evans*, Judge; reversed.

*C. V. Teague*, for appellant.

1. All the instructions given at the request of the State are erroneous. The first section of instruction 1 tells the jury that, in order to justify the killing on the ground of self-defense, it must be shown "that there was a necessity to kill by the defendant to save his own life or to prevent great bodily harm," etc. This leaves out the defense of apparent necessity, and also denies to defendant the right to protect his brother from apparently impending death or injury. Wharton on Homicide (3 ed.), § 340.

2. Under the second section, appellant would be cut off from all right of self-defense if he unintentionally provoked an assault by the use of words alone. When one "uses to another opprobrious words, that other cannot assault him * * * and deny him the right of self-defense." 95 Tenn. 711, 45 L. R. A. 687; 59 L. R. A. 756; 21 Cyc. 809; 2 Bishop's New Crim. Law (6 ed.), § 621; Wharton, Homicide (3 ed.), § § 323, 326; Kerr, Homicide, 202; 14 Tex. Crim. App. 486; 51 S. W. 214; 89 S. W. 1029; 79 Pac. 435; 31 Miss. 504; 19 S. E. 51; 18 N. W. 385; 16 L. R. A. (N. S.) 660; 35 S. W. 378; 17 Tex. Crim. App. 50.

3. The third section is not in harmony with the rest of the instruction, and is abstract.

4. The same is true of section four. It was not appellant's duty to retreat, under the circumstances, deceased being the aggressor. Kirby's Dig., § 1798; Wharton, § § 440, 442; Bishop, § 850; 62 Ark. 286; 64 Ark. 144; 19 Tex. Crim. App. 547; 8 Mich. 150; 47 N. W. 827; 36 S. E. 682; 50 N. W. 784; 30 L. R. A. 403; 67 L. R. A. 329.

5. The third instruction requires actual danger to appellant and omits his right and duty to protect his brother from real or apparent danger.

6. The fourth instruction, in the use of the words "or committed any act," is abstract and misleading. 71 Ark. 38; 73 *Id.* 568; 74 *Id.* 563; 70 *Id.* 319. Moreover, the proposition of law announced is incorrect . 28 N. W. 542; 18 S. W. 466; 52 S. E. 18; 19 S. E. 891; 15 S. W. 838; 25 S. W. 772; 44 Pac. 314; 11 So. 121; 7 S. W. 634; 15 S. E. 21; 10 La. 261; 114 S. W. 635; 22 L. R. A. (N. S.) 513.

7. The instructions, taken as a whole, are in hopeless conflict. 55 Ark. 393; 65 Ark. 98; 65 *Id.* 651; 74 *Id.* 437; 74 *Id.* 585; 76 *Id.* 69; 76 *Id.* 224; 77 *Id.* 201; 83 *Id.* 18; 83 *Id.* 202; 89 *Id.* 58.

*Hal L. Norwood,* Attorney General, and *Wm. H. Rector,* Assistant, for appellee.

1. In instructions 3 and 10, given at appellant's instance, the jury were instructed that words alone would not preclude the right of self-defense. There was therefore no error in refusing to repeat the statement in other instructions. 15 Ark. 624; 34 *Id.* 649; 37 *Id.* 67; 37 *Id.* 108; 52 *Id.* 180; 54 *Id.* 621; 53 *Id.* 472; 72 *Id.* 384; 74 *Id.* 33; 86 *Id.* 606; 87 *Id.* 308.

2. The defense of apparent necessity was presented in instructions 4 and 5, and in others given at appellant's request. Instruction 4 also preserves to appellant the right to protect his brother.

3. The court would have erred if it had ignored the testimony tending to show that the words of appellant invited the attack or had refused to instruct the jury as to appellant's duty to retreat before he could plead self-defense. Kirby's Dig., § 1765; 62 Ark. 309; 69 *Id.* 558; 73 *Id.* 399; 73 *Id.* 568; 120 Ala. 269; 129 Ala. 16; 141 Ind. 24; 87 S. W. 346; 82 Ala. 13; 98 Ala. 1; 95 Mo. 155; 107 Mo. 543; 109 Cal. 451; 10 Col. 566; 15 Oh. St. 47; 104 Tenn. 132; Wharton, pp. 504, 511; 117 Mo. 380; 47 Ill. 376; 86 Ky. 642; 24 Tex. App. 667; 40 Tex. Crim. Rep. 549; 30 Miss. 673; 105 Tenn. 305; 20 Ia. 108; 97 Mo. 105; 41 Minn. 365; 112 Ala. 30; 67 Cal. 346; 24 Tex. 454; 40 Tex. Crim. Rep. 395; 81 Ala. 33; 18 App. D. C. 152; 91 Ark. 576.

4. The third instruction is sustained by the above authorities. See also 29 Ark. 225; 29 *Id.* 228; 32 *Id.* 585; 49 *Id.* 543; 84 *Id.* 121.

5. The fourth instruction simply tells the jury that if appellant went to the pool room for the purpose of raising a diffi-

culty, and did provoke the difficulty, he could not afterwards plead self-defense. This is in accord with the authorities *supra*.

6. The instructions as a whole were correct.

BATTLE, J. On an indictment for murder in the first degree R. A. Wheatley was convicted of manslaughter, committed by killing Bud Robbins. His punishment was assessed at two years' imprisonment in the penitentiary. He has appealed to this court.

On or about the 23d day of January, 1909, the defendant having learned that his son had been mistreated by one Wacasey, he and his brother, N. T. Wheatley, went to Robbins's pool room in Hot Springs, in this State, to investigate the wrong done his son. When he was making the investigation, Bud Robbins, without being questioned, denied that his son had been mistreated. Defendant responded by saying that he was a "damned liar." Thereupon Robbins struck him and his brother with a pistol, inflicting a severe wound upon the head of each of them. During the combat defendant killed Robbins.

Over the objection of the defendant the court instructed the jury, in part, as follows:

"1. The court instructs you that, to maintain that the killing was justifiable on the grounds of self-defense, it is necessary to show:

"First. That there was a necessity to kill by the defendant to save his own life, or to prevent great bodily harm, and that he was not at fault in bringing about that necessity.

"Second. That the defendant did not provoke the attack and bring on the combat; if he did, he cannot claim self-defense and justification in killing the deceased.

"Third. You are instructed that the defendant could not invite or voluntarily bring upon himself an attack with the view of resisting it, and, if he did so, then slay his assailant, and claim that it was necessary for him to do so, and that it was done in self-defense.

"Fourth. The defendant cannot take advantage of a necessity to kill produced by his own unlawful or wrongful act, and if, having provoked or invited the attack, or brought on the combat, he kills his adversary, then he cannot be excused or justified in such killing unless he has withdrawn in good faith from the combat as far as he can consistent with his own safety and done all in his power to avoid the danger and avert the necessity of killing.

"3.   You are instructed that, although you may believe from the evidence in this case that the defendant and his brother, Nick, went out to the place of business of deceased, Robbins, for the purpose of peaceably adjusting a difference between the son of defendant and Wacasey, yet if you believe from the evidence that after defendant got out to said place of business a sudden quarrel or difficulty arose between defendant and Robbins, and that Robbins made an assault upon defendant, and that defendant shot and killed said Robbins, defendant would not be justified on the plea of self-defense unless he was so endangered by said assault as to make it necessary to kill Robbins to save his own life or to prevent great bodily injury,. and unless defendant had used all the means in his power consistent with his safety to avoid the danger and avert the necessity of killing.

"4.   If you find from the evidence that the defendant had ill feelings toward Wacasey, and went to his place of business for the purpose of raising a difficulty with said Wacasey, and while in conversation with said Wacasey as to his treatment of his son, and while so denying said mistreatment, the deceased Robbins in a peaceful manner stated to defendant, or his brother, Nick Wheatley, in the presence and hearing of defendant, that they had not mistreated defendant's son, and thereupon defendant called deceased a damn liar, or a God-damned liar, or committed any other act for the purpose of provoking a difficulty, which words aroused deceased to anger, and he struck defendant over the head a violent blow with a pistol, and then turned and struck or was in the act of striking defendant's brother, and defendant shot and killed deceased, then defendant was not justifiable in said killing, although it might have appeared to him necessary to shoot and kill the deceased to protect himself or his brother from being killed or from receiving great bodily harm."

Defendant asked for many instructions, a part of which was given, and part refused.   So much of those refused as were correct and proper were included in those given.

Without pointing out the defects and errors in the instructions in this case, we shall state the law by which the court should have been governed in giving the same.

"No one, in resisting an assault made upon him in the course of a sudden brawl or quarrel, or upon a sudden rencounter, or in a combat on a sudden quarrel or from anger suddenly aroused at the time it is made, is justified or excused in taking the life of the assailant, unless he is so endangered by such assault as to make it necessary to kill the assailant to save his own life, or to prevent a great bodily injury, and he employed all the means in his power, consistent with his safety, to avoid the danger and avert the necessity of the killing." *Duncan* v. *State,* 49 Ark. 543, 547; *Black* v. *State,* 84 Ark. 121.

"But to whom must it appear that the danger was urgent and pressing? According to reason and the weight of authority, it must so appear to the defendant. To be justified, however, in acting upon the facts as they appear to him, he must honestly believe, without fault or carelessness on his part, that the danger is so urgent and pressing that it is necessary to kill his assailant in order to save his own life or to prevent his receiving a great bodily injury. He must act with due circumspection. If there was no danger, and his belief of the existence thereof be imputable to negligence, he is not excused, however honest the belief may be." *Smith* v. *State,* 59 Ark. 132, 137; *Magness* v. *State,* 67 Ark. 594; *Elder* v. *State,* 69 Ark. 649; *Pratt* v. *State,* 75 Ark. 350, 352, 353.

Mere words, however opprobious they may be, will not justify an assault, or reduce homicide from the grade of murder to manslaughter (*Vance* v. *State,* 70 Ark. 272, 277; *Scott* v. *State,* 75 Ark. 142, 144) ; and will not preclude the one speaking them from acting in self-defense, unless he used them for the purpose of bringing on an attack and an opportunity of killing the party thereby provoked or to do him great bodily injury. *State* v. *Mc-Daniel,* 94 Mo. 301 ; 21 Cyc. 809, and cases cited.

No one can wilfully and intentionally provoke an attack and bring on a combat, and then slay his assailant, and claim exemption from the consequences of killing his adversary, on the ground of self-defense. Before he can do so, after having provoked the attack or brought on the combat, he must in good faith withdraw from the combat, as far as he can, and do all in his power to avoid the danger and avert the necessity of the killing. If he does so, and the assailant pursues him, and the taking of life becomes necessary to save life or prevent a great bodily injury, and he kills

the assailant, he is excusable. *Carpenter* v. *State,* **62 Ark.** 286, 307.

A man can lawfully do for his brother, when threatened with death or great bodily injury, what he can lawfully do for himself under the same circumstances. If the brother is in fault in provoking the assault, he must retreat as far as he safely can before his brother would be justified in taking the life of his assailant in his defense. *State* v. *Greer,* 22 W. Va. 800, 819; 1 Bishop's New Criminal Law (8 ed.), § 877; 21 Cyc., pp. 826, 827.

The instructions copied in this opinion are inconsistent with the law as we have stated it, and should not have been given in the form they were; and other instructions defective for the same reason, if there be any, should not have been given.

Other questions as to the competency and misconduct of jurors were raised in the trial in the case, and are discussed in the briefs of counsel. But, as they are not likely to arise in another trial, and are sufficiently settled by the decisions of this court, we will not notice them in this opinion.

Reverse and remand for a new trial.