## WHITTAKER *v.* STATE.

Opinion delivered September 27, 1926.

1. RAPE—SUFFICIENCY OF EVIDENCE.—Evidence *held* to sustain a conviction of rape.

2. CRIMINAL LAW—PROVINCE OF JURY.—The jury are the judges of the evidence and of the credibility of witnesses.

3. WITNESSES—IMPEACHMENT OF ACCUSED ON CROSS-EXAMINATION.—In a prosecution for rape, it was proper to permit defendant to be cross-examined as to other offenses, where such testimony was limited by the court's rulings to the purpose of testing defendant's credibility.

4. CRIMINAL LAW—CROSS-EXAMINATION OF DEFENDANT—HARMLESS ERROR.—In a prosecution for rape, cross-examination of defendant as to other offenses *held* not prejudicial, where his answers entirely exonerated him from any culpability or any immoral or reprehensible conduct in connection with the particular matters about which he was examined.

5. CRIMINAL LAW—INVITED ERROR.—If it was error to instruct the jury either to find the defendant guilty of rape or acquit him, instead of submitting the crime of assault with intent to rape, defendant cannot complain where he asked an instruction to the same effect.

6. RAPE—INSTRUCTION.—An instruction either to find defendant guilty of rape or not guilty of any offense was not erroneous where the testimony of the prosecutrix tended to prove that defendant was guilty of rape and defendant's testimony tended to prove that he was not guilty of any offense.

Appeal from Monroe Circuit Court; *George W. Clark,* Judge; affirmed.

*Bogle & Sharp,* for appellant.

*H. W. Applegate,* Attorney General, and *John L. Carter,* Assistant, for appellee.

WOOD, J.. Appellant was convicted in the Monroe Circuit Court of the crime of rape, and sentenced by the judgment of the court to imprisonment in the State Penitentiary for life. The judgment was based upon the verdict returned by the jury finding appellant guilty and fixing the term of imprisonment in the State Penitentiary for life.

The alleged victim of appellant was one Ruth Kennison, who testified, giving the circumstances of the alleged assault in detail, which we deem it unnecessary to set forth, inasmuch as we are convinced that the testimony of the prosecutrix and other witnesses for the State was amply sufficient to sustain the verdict. After detailing the facts and circumstances of the assault, the prosecutrix concludes her testimony by saying that he (the appellant) "grabbed me and jerked me across the road, slammed me down on the ground, and said, 'Lay down here, or I will kill you.' He held my arms, forced my legs open, wrestled with me until he penetrated me, actually raped me as brutally and harshly as he could." Appellant, in his testimony, denied positively that he assaulted the woman, and there was testimony of another witness in his behalf tending to corroborate his testimony. But the jury were the sole judges of the evidence and of the credibility of the witnesses, and it appears from their verdict that they believed the testimony of the prosecutrix rather than that of the appellant and his witness.

1.   The court, over the objection of appellant, permitted the attorneys for the State to ask the appellant, on cross-examination, the following questions: "Q. What did you do to that Raymond girl about four or five years ago?   A.   I didn't do anything to the Raymond girl.   Q.   Didn't you rape her?   A. No sir.   Q.   Didn't hurt her?   A.   No sir.   Q.   What about Tennessee Sawyer, what did you do to her?"

The appellant objected to the questions, and the attorney for the prosecution stated: "I want to show his immoral tendency.   Court: Do you mean to ask by that question if he assaulted this party named with the intention of having intercourse with her?   The attorney for the State: The Ramsey girl, yes sir.   Q. What did you do to Tennessee Sawyer? A. She got shot accidentally. Q. Who got shot?   A. Tennessee.   Q. You shot her, didn't you?   A.   Yes sir."

Here the attorney for the appellant again objected to the questions and answers, and asked the court to exclude the same from the jury.   The court stated: "Any evidence establishing or connecting him with immoral crimes of a serious nature would shed light on his reputation."

The attorney for the prosecution stated that the purpose of the questions was to test his credibility.

The court refused to exclude the testimony, to which ruling the appellant duly excepted.

The prosecuting attorney further interrogated the appellant, on cross-examination, as follows: "Q. You know the Ramsey girl that lived over on the Mr. Bateman place two or three years ago? A. No sir. Q.   Do you know a family named Ramsey?   I will ask you if you didn't rape a girl there, and you and your daddy paid them some money and kept it down?   A. No sir."

The court further permitted the prosecuting attorney to ask the appellant, on cross-examination, the following questions: "Q.   Didn't you shoot this girl?   A.   Yes

sir.  Q.  Didn't you shoot another negro last fall?  A.
Yes sir."

The court stated that the only purpose of the testimony
was to aid the jury in determining the degree of credit
to attach to appellant's testimony, and further stated
that this testimony was not evidence of his guilt of this
particular charge.

There was no error in the rulings of the court. The
testimony, as shown by the statement of the court in
making its rulings, was admitted for the purpose of test-
ing the credibility of the witness. The questions pro-
pounded to the appellant, and his answers thereto, were
proper when limited, as the court ruled, to the one pur-
pose of testing the credibility of the appellant as a
witness.

In the leading case of *Hollingsworth* v. *State,* 53 Ark.
387, 14 S. W. 41, this court, through Mr. Justice HEMING-
WAY, approved the general doctrine announced by the
Supreme Court of Michigan in *Wilbur* v. *Flood,* as fol-
lows: "It has always been held that, within reasonable
limits, a witness may, on cross-examination, be very
thoroughly sifted upon his character and antecedents.
The court has a discretion as to how far propriety will
allow this to be done in a given case, and will or should
prevent any needless or wanton abuse of the power. But,
within this discretion, we think a witness may be asked
concerning all antecedents which are really significant,
and which will explain his credibility."

The court also cited and quoted with approval from
*Real* v. *People,* 42 N. Y. 270, as follows: "A witness,
upon cross-examination, may be asked whether he has
been in jail, the penitentiary or State prison, or any
other place that would tend to impair his credibility, and
how much of his life he has passed in such places."

Our own court has steadily adhered to the rule
announced in *Hollingsworth* v. *State, supra,* and the fol-
lowing cases may be examined as authority on this sub-
ject: *McAlister* v. *State,* 99 Ark. 604, 139 S. W. 684;
*Turner* v. *State,* 128 Ark. 565, 195 S. W. 5; *Webb* v. *State,*

138 Ark. 465-469, 212 S. W. 567; *Turner* v. *State,* 155 Ark. 443-448, 195 S. W. 5; *Tong* v. *State,* 169 Ark. 708-712, 276 S. W. 1004; *Mays* v. *State,* 169 Ark. 332-334, 275 S. W. 659; *Ogburn* v. *State,* 168 Ark. 396-400, 270 S. W. 945; *Wray* v. *State,* 167 Ark. 54-57, 266 S. W. 939; *Lytle* v. *State,* 163 Ark. 129-131, 259 S. W. 394; *Middleton* v. *State,* 162 Ark. 530-539, 258 S. W. 995; *Sweeney* v. *State,* 161 Ark. 278-286, 256 S. W. 73; *Bank of Hatfield* v. *Chatham,* 160 Ark. 531-541, 255 S. W. 31; *Turner* v. *State,* 153 Ark. 40-46, 239 S. W. 373; *Shinn* v. *State,* 150 Ark. 215-220, 234 S. W. 636; *Pearrow* v. *State,* 146 Ark. 201-206, 225 S. W. 308; *Paxton* v. *State,* 114 Ark. 393-396, 170 S. W. 80.

It follows, from the doctrine of the above cases, that the court did not err in permitting the attorneys for the State, in the cross-examination of the appellant, to propound the questions set forth above, and did not err in permitting the answers thereto. The State was bound by the answers of the appellant to the questions, and these answers entirely exonerated the appellant from any culpability or any immoral or reprehensible conduct in connection with the particular instances designated by the attorneys for the State. Therefore no prejudice could have resulted to appellant from the cross-examination to which objection is urged.

2. The court instructed the jury as follows: "1. The defendant in this case, gentlemen of the jury, is charged with the crime of rape. Rape is defined by the statute as the carnal knowledge of a female, forcibly and against her will. In order to constitute guilt, under the indictment laid here against the defendant, it is incumbent upon the State to prove beyond a reasonable doubt the following allegations in this indictment: first, that this defendant, some time prior to the return of this indictment, and in Monroe County, Arkansas, unlawfully, feloniously and forcibly, and against the will of the prosecuting witness, had carnal knowledge of her person by penetrating her privates. It must be done, as stated, forcibly and against her will and without her consent. If these allegations are proved, and that beyond a rea-

sonable doubt, there is but one form of verdict that would be responsive, that is, guilty as charged in the indictment, the punishment of which is death in the electric chair or life imprisonment. Under the evidence in this case you would have to find the defendant either guilty of rape or not guilty of any offense; there is no evidence here that would authorize this court in submitting any other offense whatever than that laid in the indictment, which is rape.''

The appellant objected generally to the giving of this instruction, and also specifically, "for the reason that the court should not have told the jury that they could only find defendant guilty of rape, but should have told it that he could be guilty of assault with intent to rape."

Among other prayers for instruction by the appellant was the following, which the court gave: "The jury are instructed that, although you may believe from the evidence that the defendant has been guilty of assault and battery, or assault with intent to commit rape, or any other offense, still you cannot convict defendant unless you believe that he is guilty, and that beyond a reasonable doubt, of the crime with which he is charged in the indictment."

The court did not err in instructing the jury that, under the evidence in the case, they would have to find the defendant either guilty of rape or not guilty of any offense. The appellant did not present any prayer (except the above) for instruction on the offense of an assault with intent to commit rape, which offense is embraced in an indictment for rape. On the contrary, the prayer for the instruction *supra*, on the part of appellant, which the court gave, was to the effect that the appellant could not be convicted under this indictment, although the jury might believe, under the evidence, that he was guilty of an assault with intent to commit rape. Therefore appellant is certainly in no attitude to complain of the ruling of the court in giving instruction No. 1 *supra*. If the ruling was error, the appellant

waived it by the prayer for the instruction which he asked, and which the court gave. Moreover, there was no testimony to justify the court in giving an instruction allowing the jury to return a verdict for an assault with intent to commit rape. The testimony of the prosecutrix certainly tended to prove that the appellant was guilty of the crime of rape, and nothing less. On the other hand, the testimony of the appellant himself tended to prove that the appellant was not guilty of any offense. Therefore the court correctly instructed the jury that, under the testimony in the case, they should either find appellant guilty of the crime of rape as charged, or they should acquit him altogether.

There is no reversible error in the record, and the judgment is therefore affirmed.