JAMES ARMSTRONG *v.* STATE OF ARKANSAS

5669                                            475 S.W. 2d 541

Opinion delivered January 31, 1972

*Streett & Plunkett,* for appellant.

*Ray Thornton,* Attorney General; *John D. Bridgforth,* Asst. Atty. Gen., for appellee.

CARLETON HARRIS, Chief Justice. Appellant, James Armstrong, was charged with first degree murder, it being asserted that he murdered Tyree Godbolt on January 2, 1971. On trial, the jury convicted Armstrong of second degree murder and fixed his punishment at 21 years confinement in the Department of Corrections. From the judgment so entered, Armstrong brings this appeal. For reversal, only one point is relied upon, *viz,* "The court erred in refusing to allow testimony that the

deceased had made an uncommunicated threat shortly before the fatal altercation".

Armstrong asserted that he had acted in self-defense in killing Godbolt, and three witnesses, in addition to appellant, testified that Godbolt advanced toward Armstrong with "his hand under his shirt". J. W. Thompson testified that appellant told Godbolt to stop but Godbolt continued to advance and appellant struck him, knocking him down. According to Thompson, Godbolt got up, still with his hand under his shirt, and appellant fired a warning shot into the ceiling; that Armstrong then shot Godbolt when he was about three feet away.

Charles Watkins testified to practically the same set of facts, and in addition, stated that Godbolt had a bad reputation, and a reputation for carrying a knife. James Otis Robinson testified substantially to the same facts except that he stated that Godbolt also had a bottle in his hand. Marvin Stith also testified that Godbolt had a reputation in the community for being violent, and for carrying a knife.

The court considered the evidence on the question of self-defense to be sufficient to warrant instructions to the jury relating to that defense. Appellant offered to prove by Roy Hamilton that Godbolt, after going in the direction of his residence, came back, and had a conversation with a third person, and that Hamilton overheard Godbolt say that wherever he found James Armstrong he was going to "kick his g--d-- a--". The court would not permit this testimony, stating that the same was an uncommunicated statement; that "the killing was open and visible to many witnesses, and the proposed testimony was not the best evidence". Appellant objected and excepted to the ruling.

We think the learned court erred in this ruling. In *Decker* v. *State,* 234 Ark. 518, 353 S. W. 2d 168, 98 ALR 2d 1, this court said:

"It is likewise true, that where the defendant relies upon self-defense, uncommunicated threats are admis-

sible where there is doubt as to who was the aggressor, but this evidence is admissible solely for the purpose of bearing on this question. See *Parsley* v. *State,* 151 Ark. 246, 235 S. W. 797, and *Bell* v. *State,* 69 Ark. 148, 61 S. W. 918, *Lee* v. *State supra."*

As stated, the trial court considered the evidence on self-defense sufficient to require that the jury be instructed on that defense and indeed, we think this action by the court was proper. In *Decker,* the evidence was not permitted, but we held that no error was committed because we found that the testimony offered by the defendant was not consistent with a plea of self-defense.

In its brief, the state argues that the proof here did not support the plea of self-defense; further, it is said that the statement allegedly made by the deceased was not a threat against appellant's life, and would not place appellant under apprehension for his own life. We have already commented that we thought the evidence raised the issue of self-defense, and, though the word "kill" was not included in the alleged statement by Godbolt, we certainly think the evidence was admissible on the question of which man was the aggressor—and the testimony was only admissible for that purpose.

We are unable to say that exclusion of this offered evidence was not prejudicial to appellant, and accordingly, the judgment of conviction is reversed, and the cause remanded.

It is so ordered.